ENTERED
MAR 02 2010
K.R.W.

FILED
at ___ O'clock & ___ min ___ M
MAR 02 2010
United States Bankruptcy Court
Columbia, South Carolina (25)

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

Patricia Ann Brown,

Debtor(s).

C/A No. 09-09068-JW

Chapter 13

**ORDER**

This matter comes before the Court on the Objection to Confirmation of Debtor's Chapter 13 Plan ("Objection") and Motion to Modify Stay ("Stay Motion") filed by Financial Freedom Senior Funding ("Financial Freedom"). Patricia Ann Brown ("Debtor") filed an objection to the Stay Motion on the basis that Financial Freedom is adequately protected. Debtor also asserts that the plan should be confirmed. The Chapter 13 Trustee recommended confirmation of Debtor's plan dependent upon resolution of the Objection in Debtor's favor. After considering the pleadings in this matter and the arguments and evidence presented at the hearing, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).[1]

## FINDINGS OF FACT

1. Financial Freedom is the holder of an adjustable rate home equity conversion note ("Note") executed by Debtor's mother, Doris Jean Zeigler.[2] The Note in an amount of up to $90,000.00 is secured by a reverse mortgage ("Mortgage") on real property located at 726 Dixie Avenue, Columbia, South Carolina ("Property"). The

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such; and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

[2] The Note was signed by Debtor as attorney-in-fact on behalf of Doris Jean Zeigler.

Property was owned by Debtor's mother at the time of the execution of the Note and Mortgage.

2.  According to the Mortgage, the maturity date of the debt is February 14, 2078.

3.  Debtor's mother died on October 10, 2007, and Debtor inherited title to the Property. Under the terms of the Note and Mortgage, the full and final payment of the debt owed to Financial Freedom was accelerated and became immediately due upon the death of Debtor's mother. The loan was called and foreclosure proceedings were commenced prior to the filing of this case, as indicated by Debtor's Statement of Financial Affairs.

4.  On December 4, 2009, Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. In her schedules, Debtor lists the Property as her principle residence and lists Financial Freedom as a creditor holding a secured claim in the amount of $29,524.44. The Property is listed as having a current value of $70,000.00.[3]

5.  On December 17, 2009, Debtor filed her chapter 13 plan, wherein she proposes to pay Financial Freedom the total outstanding indebtedness of $29,524.44, plus 5.25% interest, over a period of 60 months at a rate of $561.00 per month.

6.  Financial Freedom objects to confirmation of the plan, asserting that (1) its treatment under the plan is impermissible because Debtor is unable to cure the default under 11 U.S.C. § 1322(b)(5), (2) the plan has been proposed in bad faith and (3) the plan

---

[3]  In its Certification of Facts for its Stay Motion, Financial Freedom agreed that the fair market value of the property is $70,000.00.

is not feasible. Additionally, Financial Freedom has moved for relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1).

7.      Debtor has been employed with the same company for the past 11 years and has resided in the Property for the past 40 years. Debtor receives financial assistance from her daughter and son, who also reside at the Property. Debtor's daughter has also resided in the Property for the past 40 years. Debtor's son has resided in the Property intermittently during the past 40 years.

## CONCLUSIONS OF LAW

Financial Freedom objects to its treatment under Debtor's chapter 13 plan and asserts that Debtor should be required to amend her plan to reflect that she will surrender her interest in the Property. Financial Freedom argues that allowing Debtor to cure over the term of the plan would constitute an impermissible modification of its rights under 11 U.S.C. § 1322(b)(2),[4] because the plan proposes to extend the term of repayment of a fully accelerated debt that is secured only by Debtor's principal residence.[5] Financial Freedom asserts that Debtor is unable to cure the acceleration of the debt under 11 U.S.C. § 1322(b)(5),[6] because the cause of the acceleration was the death of Debtor's mother. In support of this argument, Financial Freedom cites In re Trapp, 260 B.R. 267 (Bankr. D.S.C. 2001), in which this Court quoted the holding in In re Taddeo, 685 F.2d 24 (2d.

---

[4]     Section 1322(b)(2) provides, in relevant part, that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence..."

[5]     The parties do not appear to dispute that the Property is property of the estate or that the mortgage debt is a claim within the meaning of 11 U.S.C. §§ 1322(b)(2), (b)(5), (c)(2), or 101(5). This Court has previously held that even where there is no privity of contract between mortgage creditor and the debtor, the mortgage creditor holds a claim against debtor's estate where the debtor owns property as to which the mortgage creditor holds a lien and that property is property of the estate. See In re Trapp, 260 B.R. 267, 271 (Bankr. D.S.C. 2001).

[6]     Section 1322(b)(5) provides that "notwithstanding [§1322(b)(2)], [the plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due."

Cir. 1982) that "the power to cure must comprehend the power to 'de-accelerate'." Financial Freedom also cites In re Henry, 153 Fed. Appx. 146 (4th Cir. 2005), an unpublished Fourth Circuit opinion in which the Fourth Circuit found that debtor could not cure a claim that fully matured prior to the bankruptcy filing within the meaning of § 1322(b)(5).

In response, Debtor argues that § 1322(c)(2) contains an exception that allows her to modify Financial Freedom's Mortgage and pay its claim in full over the term of her chapter 13 plan. Section 1322(c)(2) provides that "[n]otwithstanding [§ 1322(b)(2) and applicable nonbankruptcy law ... in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title." In other words, with respect to mortgages on which the last payment on the original payment schedule is due before the date on which the final payment under the chapter 13 plan is due, debtors are permitted under §1322(c)(2) to modify a mortgage creditor's rights by proposing in their plan to pay the mortgage creditor in full over the course of the bankruptcy. Under the terms of Debtor's Note and Mortgage, no payment schedule is provided. By its terms, the Note provides that the debt becomes immediately payable in full upon the occurrence of one of the following conditions: (1) death of the borrower, (2) the transfer of all of borrower's title in the Property, (3) the Property ceases to be the principal residence of the borrower, (4) the borrower fails to physically occupy the Property for a period of more than twelve months, or (5) the borrower fails to perform an obligation under the Mortgage. Debtor argues that

§ 1322(c)(2) applies to Financial Freedom's debt in this case because the death of Debtor's mother caused the debt to become immediately payable in full and this payment was due prior to the due date of the final payment under Debtor's plan.

Financial Freedom argues that § 1322(c)(2) does not apply because the debt in this case has not yet matured, noting the maturity date set forth in the note is beyond the term of Debtor's chapter 13 plan. This argument is not persuasive. Financial Freedom contends that acceleration of the Note has occurred in this case according to its terms. The term "acceleration" is defined as "the advancing of a loan agreement's maturity date so that payment of the entire debt is due immediately." Black's Law Dictionary 11 (7th ed. 1999). Thus, the acceleration of the Note in this case caused the last payment of the debt to be moved to a date that was prior to the date of the final payment on Debtor's chapter 13 plan. Furthermore, the authority cited by Financial Freedom does not appear to address § 1322(c)(2). The Court's opinion in Trapp addressed the issue of whether a debtor could cure a default under § 1322(b)(5) where the debt had been accelerated under the terms of the note due to the debtor's default in making payments. The Court concluded that the fact that the debt was accelerated due to the debtor's default did not prohibit the curing of such default through the chapter 13 plan. The applicability of § 1322(c)(2) was not raised. The debt in this case became payable in full due to the occurrence of an acceleration event under the terms of the Note and not due to default in payment. In the Henry case, an unpublished opinion that is not binding precedent, the Fourth Circuit only addressed the issue of whether a debtor could cure a fully matured debt under § 1322(b)(5). These cases do not preclude a finding that § 1322(c)(2) would allow the treatment proposed by Debtor in her chapter 13 plan.

The Fourth Circuit stated in Witt v. United Companies Lending Corp. that § 1322(c)(2) serves primarily to permit debtors to cure maturing obligations by paying the remaining part of the debt over the life of a chapter 13 plan and that this repayment flexibility is an important tool for debtors in restructuring the payment of home mortgage debt in chapter 13 plans. 113 F.3d 508, 512 (4th Cir. 1997). This subsection has been applied by bankruptcy courts in other jurisdictions to permit a debtor to pay over the term of his plan the total outstanding indebtedness on a reverse mortgage that matured or accelerated prior to the petition date. See In re Carter, No. 09-35587, 2009 WL 5215399, at *3 (Bankr. S.D. Tex. Dec. 28, 2009) (holding that the debtor may pay the full outstanding indebtedness of a reverse mortgage that matured pre-petition as a result of the death of the mortgagor over the course of his bankruptcy plan); see also In re Wilcox, 209 B.R. 181, 183 (Bankr. E.D.N.Y. 1996) (same). Furthermore, legislative history indicates that Congress added this subsection for the purpose of overruling First National Fidelity Corp. v. Perry (In re Perry), 945 F.2d 61 (3d Cir. 1991), which held that under § 1322 (b)(2), a debtor could not utilize § 1325(a)(5) to provide for a mortgage debt that was due in full prior to the due date of the final payment of the plan by paying the full amount of the secured claim though the chapter 13 plan. See Witt, 113 F.3d at 512 (finding that the changes made to § 1322(c) were intended to overrule the result in Perry); see also In re Escue, 184 B.R. 287 (Bankr. M.D. Tenn. 1995) ("[Section 1322](c)(2) appears to contemplate mortgages which mature post-petition, but the Congressional intent of this statute when considered in light of the other provisions of Chapter 13, and the overall objectives of bankruptcy, suggest that Congress also intended for debtors to be

able to cure defaults on short-term mortgages which mature or balloon prior to the petition date.")

Based on its examination of the language of § 1322(c)(2), the legislative history and case law interpreting this section,[7] the Court finds § 1322(c)(2) applies to permit Debtor to pay the full amount of Financial Freedom's claim over the course of her bankruptcy plan. Separately, even if § 1322(c)(2) did not apply, the substantial equity in the Property could allow Debtor, who is financially able to retire the debt in a short period, to retain the collateral for a substantial period even without a confirmed plan in order to seek to pay or refinance the debt. Accordingly, First Financial's objection on the basis that its treatment under the plan is impermissible is overruled.

Financial Freedom also objects to confirmation on the basis that the plan lacks feasibility because Debtor is relying on assistance from family members and on the basis that the plan has been proposed in bad faith because Debtor knew the Note was due upon her mother's death. It asserts that the plan is not feasible because Debtor is relying on assistance from family members. However, Debtor presented testimony that she has been regularly employed with the same employer for eleven years and is receiving contributions from her daughter, who is employed and has lived with Debtor for over forty years. She also testified that her son had recently moved into the family home and was contributing to the household expenses. The chapter 13 trustee did not raise concerns regarding the feasibility of the plan and recommended confirmation in the event Financial Freedom's objection was overruled. No persuasive evidence was presented

---

[7] This Court agrees with the reasoning in the Carter and Wilcox opinions and notes that these cases were decided on nearly identical facts as the case at bar.

indicating bad faith. Accordingly, the Court finds that Financial Freedom's objection to confirmation on these grounds should be overruled.

Finally, Financial Freedom seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) on the grounds that Debtor cannot cure the default and its interest is not adequately protected. Debtor's plan proposes to pay the full outstanding indebtedness of the mortgage, plus interest, over the course of her bankruptcy plan. As previously discussed, it appears that the proposed treatment of Financial Freedom's claim in the plan is permitted under § 1322(c)(2) and provides assurance of periodic payments to Financial Freedom.[8] The parties do not dispute that there is significant equity in the Property and that the Property, as Debtor's residence, is necessary for reorganization. It appears that Financial Freedom's interest is adequately protected by the equity in the Property and the proposed payments. Accordingly, the Court finds no cause for relief from the automatic stay.

For the foregoing reasons, the Financial Freedom's Objection to Confirmation is overruled and its Motion to Modify Stay is denied.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
March 2, 2010

---

[8] The Court observes that Financial Freedom has not yet filed a proof of claim. The deadline for filing a proof of claim has not yet expired. Without an allowed claim, Financial Freedom will not receive distributions under the plan.